IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

CHERYL JONES, *individually and* *
*on behalf of all similarly* 
*situated individuals, et al.,* *

    Plaintiffs, *

vs. *      CASE NO. 4:16-CV-141 (CDL)

JRN INC., *et al.,* *

    Defendants. *

_____

O R D E R

Defendant JRN Inc. owns and operates Kentucky Fried
Chicken, KFC/Taco Bell, and KFC/Long John Silver's restaurants
in eleven states. Defendants John Neal, David Neal, and Tyrone
Neal are current and former officers of JRN. Plaintiffs Cheryl
Jones, LaQuanda Jackson, Veronica Deloney, Samuel Jordan, Angela
Horace, Beternia Baker, Kimiya Carter, and Marilyn Nelson worked
as assistant managers—also referred to as assistant unit
managers—in JRN's restaurants in Columbus, Georgia and Phenix
City, Alabama. Plaintiffs claim that until January 1, 2014, JRN
had a company-wide policy of classifying assistant managers as
exempt/salaried employees even though their duties were
predominately non-managerial. As a result, Plaintiffs contend
that they were not paid overtime wages as required by the Fair
Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219. Plaintiffs
now seek conditional certification of their putative FLSA

collective action pursuant to 29 U.S.C. § 216(b). Defendants oppose the motion, arguing that Plaintiffs were properly classified as exempt employees and that Plaintiffs' proposed class includes individuals who are not similarly situated to Plaintiffs. As discussed in more detail below, the Court grants Plaintiffs' Motion for Conditional Certification (ECF No. 25).

## DISCUSSION

An employer who violates the FLSA's minimum wage or overtime compensation requirements shall be liable to the affected employees in the amount of the unpaid minimum wages or unpaid overtime compensation. 29 U.S.C. § 216(b). An action to recover such wages or compensation may be maintained against the employer as a collective action, and employees wishing to be plaintiffs in such an action must "opt in" by filing a written consent with the court. *See id.* To maintain an FLSA collective action, the plaintiffs "must demonstrate that they are similarly situated." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008).

## I. The Eleventh Circuit's Two-Stage Procedure for Managing FLSA Collective Actions

The Eleventh Circuit approved a two-stage procedure for managing FLSA collective actions. "The first step of whether a collective action should be certified is the notice stage." *Id.* at 1260. During the notice stage, the court must determine "whether other similarly situated employees should be notified"

of the action based on the pleadings and any affidavits. *Id.;* *accord Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218- 19 (11th Cir. 2001) (per curiam). The plaintiff must show "a 'reasonable basis' for his claim that there are other similarly situated employees." *Morgan*, 551 F.3d at 1260; *accord Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (stating that plaintiffs must demonstrate "a 'reasonable basis' for their claim of class-wide discrimination"). The standard for determining similarity at the notice stage is "fairly lenient." *Id.* at 1261 (quoting *Hipp*, 252 F.3d at 1218). "The plaintiffs may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which 'successfully engage defendants' affidavits to the contrary.'" *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (quoting *Sperling v. Hoffman–LaRoche*, 118 F.R.D. 392, 406 (D.N.J. 1988)).

If the court conditionally certifies a collective action, then putative class members are given notice and an opportunity to "opt in." *Hipp*, 252 F.3d at 1218. The second stage is the "decertification" stage. When "discovery is largely complete and the matter is ready for trial[,]" a defendant may file a motion for "decertification," and the court must make "a factual determination on the similarly situated question." *Id.* (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995),

*overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92 (2003)).  If the Court determines that the matter should not proceed as a collective action, the action shall be decertified.

## II.  **Factual Background**

This case is in the notice stage—no discovery has taken place, and Plaintiffs seek conditional certification of a collective action.  In support of their motion to certify, each Plaintiff submitted a declaration.  Plaintiffs also submitted the declaration of Brenda Dukes, who was an assistant manager at JRN's KFC/Taco Bell restaurant in Atoka, Tennessee.  Defendants argue that the Court should not consider Dukes's affidavit because she brought a putative FLSA collective action against JRN, which was settled before Dukes filed a motion for conditional certification.  While it is certainly clear that Dukes cannot opt in to this action as a plaintiff because she has already settled her FLSA claims against JRN, Defendants offer no authority for their apparent position that Dukes cannot be a fact witness in this case.  Defendants also argue that Dukes is biased and that the statements in her declaration should not be considered because they are contradicted by the declarations that Defendants submitted.  At this stage in the litigation, the Court is not directed to weigh the facts or make credibility determinations; the Court is directed to determine

whether Plaintiffs' declarations "successfully engage defendants' affidavits to the contrary." *Grayson*, 79 F.3d at 1097 (quoting *Sperling*, 118 F.R.D. at 406). Defendants did not point to any reason why Dukes's declaration is inadmissible under the Federal Rules of Evidence or the Federal Rules of Civil Procedure, and the Court will consider it.

According to the declarations, assistant managers' "principal job duties involved regular team work such as, preparing food, working the cash register, cleaning, stocking, inventory, etc." Jones Decl. ¶¶ 10-11, ECF No. 26-3; *accord* Baker Decl. ¶¶ 9-10, ECF No. 36; Ransom Decl. ¶¶ 8-9, ECF No. 37; Dukes Decl. ¶¶ 7-8, ECF No. 26-4. Assistant managers did not have authority to hire or fire other employees. Jones Decl. ¶¶ 13-14; Baker Decl. ¶¶ 12-13; Ransom Decl. ¶¶ 11-12; Dukes Decl. ¶¶ 10-11. Assistant managers were supervised by a general manager who directed the assistant managers in their job duties and made all the managerial decisions in the restaurant. Jones Decl. ¶ 12; Baker Decl. ¶ 11; Ransom Decl. ¶ 10; Dukes Decl. ¶ 9. Before January 1, 2014, assistant managers were salaried workers who did not receive overtime pay even though they routinely worked more than forty hours in a workweek. Jones Decl. ¶¶ 6-8; Baker Decl. ¶¶ 5-6, 8; Ransom Decl. ¶¶ 5-7; Dukes Decl. ¶¶ 5-6.

In January 2014, JRN converted assistant managers from salaried to hourly employees and began paying overtime for some of the overtime hours worked. Jones Decl. ¶ 4; Baker Decl. ¶ 3; Ransom Decl. ¶ 3; Dukes Decl. ¶ 3. In early 2016, some of JRN's assistant managers received a letter from JRN's human resources director, Claire Moye. Jones Decl. ¶ 15; Dukes Decl. ¶ 13. The letter explained that JRN had learned about "confusion among" assistant managers regarding the 2014 change in pay practices. Jones Decl. Ex. A, Letter from Claire Moye to Cheryl Jones (Jan. 28, 2016), ECF No. 26-3. The letter indicated that assistant managers were converted "to hourly pay at the beginning of 2014." *Id.* It also stated that JRN was "not legally required to" make this change. *Id.*

## III. Plaintiffs Have Established a Reasonable Basis for Their Claims

Defendants contend that Plaintiffs have not established a reasonable basis for their claims that they were misclassified as exempt/salaried employees and denied overtime pay. The FLSA's minimum wage and overtime requirements do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C § 213(a)(1). Defendants assert that the primary duty of assistant managers is managerial, triggering the FLSA's executive exemption. The executive exemption is an affirmative defense that is narrowly construed and "is to be applied only to those clearly and

unmistakably within the terms and spirit of the exemption."
*Morgan*, 551 F.3d at 1269 (quoting *Brock v. Norman's Country
Mkt., Inc.*, 835 F.2d 823, 826 (11th Cir. 1988)). The Eleventh
Circuit has "rejected a 'categorical approach' to deciding
whether an employee is an exempt executive." *Id.* (quoting
*Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1264
(11th Cir. 2008)). Instead, the Eleventh Circuit has "noted the
'necessarily fact-intensive nature of the primary duty inquiry,'
that 'the answer is in the details,' and that '[w]here an issue
turns on the particular facts and circumstances of a case, it is
not unusual for there to be evidence on both sides of the
question, with the result hanging in the balance.'" *Id.*
(alteration in original) (quoting *Rodriguez*, 518 F.3d at 1264).
Thus, if there is a genuine fact dispute on whether an employer
has met its burden of proving that the exemption applies, the
issue must be resolved by a jury. *See id.* (declining to set
aside a jury verdict against an employer on the executive
exemption affirmative defense where there was evidence from
which a jury could conclude that the exemption did not apply to
store managers of Family Dollar stores).

To be an "employee employed in a bona fide executive
capacity," an employee must (1) be paid a salary of at least
$455 per week; (2) have a "primary duty [that] is management of
the enterprise in which the employee is employed or of a

customarily recognized department or subdivision thereof;" (3) "customarily and regularly direct[] the work of two or more other employees;" and (4) have "the authority to hire or fire other employees" or have significant input into hiring, firing, and advancement decisions. 29 C.F.R. § 541.100(a). Here, Plaintiffs argue that they did not have authority to hire or fire other employees and that their primary job duties were not managerial.

According to Plaintiffs' declarations, they did not have authority to hire or fire other employees. Jones Decl. ¶¶ 13-14; Baker Decl. ¶¶ 12-13; Ransom Decl. ¶¶ 11-12; Dukes Decl. ¶¶ 10-11.[1] Defendants point out that assistant managers help the general managers screen employment applications and interview new non-managerial employees; assistant managers, along with the general managers, also make recommendations to the area manager about which candidates to hire. Barnes Decl. ¶¶ 4-5, ECF No. 53; Shakoor Decl. ¶ 10, ECF No. 52. But Defendants' proffer does not establish that the assistant managers' suggestions, standing alone without reference to the general managers' suggestions, "are given particular weight" as is required under

---

[1] The declarations in the present record conflict on whether assistant managers in Tennessee had hiring and firing authority. Dukes states that she did not have authority to hire or fire other employees. Dukes Decl. ¶¶ 10-11. Another JRN employee from Tennessee says that he did have such authority. Crouch Decl. ¶¶ 6-7, ECF No. 54.

29 C.F.R. § 541.100. The present record thus does not establish that the hiring/firing authority requirement is met.

Plaintiffs also assert that their primary duty was not management. "The term 'primary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id.*; *accord Morgan*, 551 F.3d at 1268-69. The regulations set forth factors to consider in determining an employee's primary duty, including "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700(a). The regulations also provide an example:

> [A]ssistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.

*Id.* § 541.700(c).

Here, Plaintiffs assert that their "principal job duties involved regular team work such as, preparing food, working the cash register, cleaning, stocking, inventory, etc." Jones Decl. ¶¶ 10-11; *accord* Baker Decl. ¶¶ 9-10, ECF No. 36; Ransom Decl. ¶¶ 8-9; Dukes Decl. ¶¶ 7-8. Defendants point to evidence that assistant managers work alongside and direct team members; have keys and security codes to the restaurant so they can open and close; participate in inventory; help set team member schedules; monitor food and employee safety; resolve customer complaints; and write up team members for disciplinary issues. *E.g.,* Barnes Decl. ¶¶ 7-14. Often, assistant managers are the highest ranking employees at the restaurant during their shift. *Id.* ¶ 6. Neither set of declarations establishes how much time the assistant managers spent on exempt work, the relative importance of their exempt duties as compared with their other duties, what level of direct supervision the assistant managers had, or how much the assistant managers were paid compared to non-managerial team members.

In support of their argument that Plaintiffs' primary duty was management, Defendants point to a district court case out of the Northern District of Georgia, *Lovett v. SJAC Fulton Ind I, LLC*, No. 1:14-CV-983-WSD, 2015 WL 3889719 (N.D. Ga. June 23, 2015), which was brought by assistant managers at several

10

Zaxby's restaurants. In *Lovett*, at least some discovery had been completed, and there was uncontroverted evidence that most of the Zaxby's assistant managers spent well over fifty percent of their time performing management tasks. *Id.* at *6-*7. In contrast, there has been no discovery in the present action, and the record does not contain sufficient evidence for the Court to determine whether the JRN assistant managers' duties were primarily management—much less conclude that Defendants have met their burden of proving the executive exemption affirmative defense.

In summary, based on the present record, Plaintiffs have established a reasonable basis for their claim that they were misclassified as exempt/salaried employees.[2]

## IV. Plaintiffs Have Established that they are Similarly Situated

Defendants argue that even if Plaintiffs established a reasonable basis for their claim, they have not established that they are similarly situated to other assistant managers. Again, the standard for determining similarity at the notice stage is "fairly lenient." *Morgan*, 551 F.3d at 1261 (quoting *Hipp*, 252 F.3d at 1218). "The plaintiffs may meet this burden, which is

---

[2] Once some discovery is completed, it may become clear that assistant managers' primary duties were management functions and that they had hiring and firing authority or significant input into hiring and firing decisions. But at this point, the record is not sufficiently developed for the Court to find as a matter of law that Plaintiffs have not shown a reasonable basis for their claims.

not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which 'successfully engage defendants' affidavits to the contrary.'" *Grayson*, 79 F.3d at 1097 (11th Cir. 1996) (quoting *Sperling*, 118 F.R.D. at 406).

Defendants argue that Plaintiffs cannot establish that they are similarly situated to other assistant managers because they do not have personal knowledge of how other assistant managers were treated with regard to overtime. Plaintiffs submitted declarations stating that when they were salaried assistant managers at JRN restaurants, they routinely worked more than forty hours per week but were not paid overtime premium pay. Jones Decl. ¶¶ 6, 8; Baker Decl. ¶¶ 4-5; Carter Decl. ¶¶ 5-6, ECF No. 26-3 at 12; Deloney Decl. ¶¶ 5-6, ECF No. 26-3 at 9-10; Horace Decl. ¶¶5-6, ECF No. 26-3 at 6; Jackson Decl. ¶¶ 6-7, ECF No. 26-3 at 17; Nelson Decl. ¶¶ 5-6, ECF No. 26-3 at 15; Ransom Decl. ¶¶ 5-6. Plaintiffs' declarations state that Plaintiffs observed other assistant managers performing the same job duties as them, which included "regular team work such as, preparing food, working the cash register, cleaning, stocking, inventory, etc." Jones Decl. ¶¶ 10-11; Baker Decl. ¶¶ 9-10; Carter Decl. ¶¶ 9-10; Deloney Decl. ¶¶ 8-9; Horace Decl. ¶¶ 7-8; Jackson Decl. ¶¶ 11-12; Nelson Decl. ¶¶ 8-9; Ransom Decl. ¶¶ 8-9. And Plaintiffs' declarations state that Plaintiffs observed other

assistant managers working more than forty hours in a week without being paid overtime premium pay. Jones Decl. ¶ 7; Baker Decl. ¶ 8; Carter Decl. ¶ 8; Deloney Decl. ¶ 7; Horace Decl. ¶ 12; Jackson Decl. ¶ 8; Nelson Decl. ¶ 7. Furthermore, Dukes's declaration states that Dukes, who worked in a different state under a different area manager, had a similar experience: she routinely worked more than forty hours a week but was not paid overtime; she performed the same work as other assistant managers; and that other assistant managers worked more than forty hours per week without receiving overtime. Dukes Decl. ¶¶ 5-8, 12.

Defendants contend that the Court should ignore these declarations, apparently because the declarations do not explicitly state that they are based on personal knowledge. But the declarations state that they are based on the declarants' own experiences and observations, and thus they may be considered.

Defendants also argue that Plaintiffs did not point to a single policy or plan that violated the FLSA. In support of this argument, Defendants emphasize that simply classifying a group of employees as exempt is not, by itself, an FLSA violation because an FLSA overtime violation does not occur until an employee is owed unpaid overtime wages. Defendants also note that if employees with widely different job duties

(who are thus not similarly situated) are classified as exempt, that does not mean that their classification is a common scheme that is subject to collective action because the exemption must be analyzed based on each employees' job duties. But this case does not involve employees with widely different job duties, and Plaintiffs allege that JRN's exempt classification of assistant managers resulted in unpaid overtime wages. Again, Plaintiffs assert that until 2014, (1) JRN had a companywide policy of classifying all assistant managers as exempt/salaried employees, (2) the assistant managers had similar job duties and worked under similar conditions, (3) the assistant managers' primary job duties were non-managerial, (4) the assistant managers were routinely required to work more than forty hours per week, and (5) the assistant managers were not paid overtime wages if they worked more than forty hours in a week. In sum, Plaintiffs allege that they are similarly situated to other assistant managers and that they were denied overtime wages.

Finally, Defendants contend that even if Plaintiffs establish for purposes of the present motion that they are similarly situated to other assistant managers, they have not established a basis for concluding that they are similarly situated to JRN assistant managers outside the Columbus, Georgia market who were salaried rather than hourly prior to 2014. Defendants thus ask that the Court restrict any collective

action to JRN assistant managers who worked in the Columbus, Georgia market. They contend that assistant managers in the Columbus market were treated differently than assistant managers in other markets because an area manager handled the final hiring decisions in the Columbus market; in other markets, Defendants assert, general managers and assistant managers could make hiring decisions.

In support of this argument, Defendants focus on *Creel v. Tuesday Morning, Inc.,* No. 2:09CV728-MHT, 2013 WL 1896162, at *6 (M.D. Ala. May 6, 2013), where the district judge concluded that the plaintiffs had not shown that they were similarly situated to employees in other markets. In *Creel*, the court concluded that a nationwide collective action of retail store managers was not appropriate because after "extensive discovery," the plaintiff submitted evidence regarding the experience of store managers in only three states. *Id.* Defendants also cite *Lovett*, where the district judge concluded that two former Zaxby's restaurant assistant managers had not, despite having an opportunity to conduct some discovery, established that they had job duties similar to those of the current assistant managers they sought to represent. *Lovett*, 2015 WL 3889719, at *14.

What Defendants do not acknowledge is that in *Creel*, there had been extensive discovery, and in *Lovett*, there had been at least some. Here, there has been none. Plaintiffs did submit

the declaration of Dukes, who was a JRN assistant manager in Tennessee. Based on her declaration, there is a reasonable basis for concluding that assistant managers in Columbus, Georgia are similarly situated to JRN assistant managers in other markets. Again, at this stage of the litigation, Plaintiffs may meet their burden, "which is not heavy," of establishing substantial similarity "by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which 'successfully engage defendants' affidavits to the contrary.'" *Grayson* 79 F.3d at 1097 (quoting *Sperling*, 118 F.R.D. at 406). The Court is satisfied that Plaintiffs have met the lenient notice-stage requirement of establishing that they are similarly situated to other JRN assistant managers.

## V. Plaintiffs Have Demonstrated that Other Similarly Situated Employees Desire to Opt In

The next question is whether Plaintiffs have demonstrated "that there are other similarly situated employees" who desire to opt in. *Morgan*, 551 F.3d at 1259-60; *accord Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991). Here, eight Plaintiffs brought this action, and at least one additional class member has filed an opt-in consent form. The Court is satisfied that the "other similarly situated employees" requirement is met.

The Court acknowledges that some other district courts have applied a stricter standard for conditional certification, requiring a critical mass of similarly situated employees to opt in as plaintiffs *before* the Court authorizes notice to be sent to such employees. As the Court recently explained in *Rangel v. Compliance Staffing, LLC*, No. 3:16-cv-30(CDL), the Court rejects the rationale of these cases and finds that such an approach is not supported by Eleventh Circuit precedent, which makes it clear that a more lenient standard should be applied at the conditional certification stage. Order Granting Conditional Certification 8-9, *Rangel v. Compliance Staffing, LLC*, ECF No 49 in 3:16-cv-30(CDL) (M.D. Ga. July 12, 2016).

**VI. Equitable Tolling**

Plaintiffs seek to equitably toll the FLSA's statute of limitations until putative class members receive notice and an opportunity to opt in to this action. For the following reasons, the Court finds that equitable tolling does not apply to the circumstances presented here. To join an FLSA collective action, an employee must consent, or opt in, to the action by filing with the court a written consent to join. 29 U.S.C. §§ 216(b), 256(b); *see Grayson*, 79 F.3d at 1106. "[O]pt-in plaintiffs are deemed to commence their civil action only when they file their written consent to opt into the class action." *Id.* Therefore, an opt-in plaintiff "must file his written

17

consent to opt into the class action prior to the expiration of the statute of limitations on his [FLSA] claim." *Id.* at 1107. Once an individual opts in to an FLSA collective action, the statute of limitations is tolled from the date the consent form is filed, but if the court later denies certification of the collective action and dismisses the opt-in plaintiffs, the statute of limitations resumes upon that dismissal. *E.g.*, *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1379 n.6, 1380 (11th Cir. 1998).

Plaintiffs seek to toll the statute of limitations for putative class members until class notice can be effectuated. Equitable "tolling is an extraordinary remedy which should be extended only sparingly." *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993). It is permitted "upon finding an inequitable event that prevented plaintiff's timely action." *Id.* (quoting David D. Doran, Comment, *Equitable Tolling of Statutory Benefit Time Limitations: A Congressional Intent Analysis*, 64 Wash. L. Rev. 681, 682 (1989)). "Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Motta ex rel. A.M. v. United States*, 717 F.3d 840, 846 (11th Cir. 2013) (quoting *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir.2006)). "It is also appropriate if in the exercise of due diligence, the claimant

nonetheless files 'a defective pleading during the statutory period.'" *Id.* (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). Equitable tolling has also been permitted where the plaintiff "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin*, 498 U.S. at 96; *see also Sec'y of Labor v. Labbe*, 319 F. App'x 761, 764 (11th Cir. 2008) (per curiam) (noting that the Secretary's allegation that an employer "submitted 'Receipts for Payment of Back Wages' knowing that they were false [was] sufficient to suggest equitable tolling"). Finally, equitable tolling is permitted if the plaintiff receives inadequate notice from the EEOC of his right to sue and the time limits for doing so. *Browning v. AT&T Paradyne*, 120 F.3d 222, 227 (11th Cir. 1997) (per curiam); *cf. Chapman v. Fred's Stores of Tenn., Inc.*, No. 2:08-cv-01247-HGD, 2013 WL 1767791, at *15-*16 (N.D. Ala. Mar. 15, 2013) (finding that statute of limitations for Equal Pay Act claims should be tolled for female assistant managers who claimed that they did not know until notice was effectuated that male assistant managers were paid higher wages and distinguishing *In re Tyson Foods, Inc.*, No. 4:07-MD-1854 (CDL), 2008 WL 4613654 (M.D. Ga. Oct. 15, 2008), an FLSA case where equitable tolling did not apply because employees "were aware they were working off the clock and not getting paid").

Equitable tolling is not generally permitted where "the claimant failed to exercise due diligence in preserving his legal rights." *Irwin*, 498 U.S. at 96 (holding that equitable tolling was not appropriate where plaintiff failed to file his Title VII complaint within thirty days of his attorney's receipt of the right-to-sue letter); *accord Motta*, 717 F.3d at 846-47 (declining to apply equitable tolling because the plaintiff's "untimely filing could have been avoided with due diligence"); *Sandvik v. United States*, 177 F.3d 1269, 1271-72 (11th Cir. 1999) (per curiam) (declining to apply equitable tolling because untimely filing was due to neglect, not extraordinary circumstances); *Justice*, 6 F.3d at 1480 (finding that plaintiff's failure to prosecute his case barred application of equitable tolling).

Here, there is no evidence in the present record to support equitable tolling. There has been no showing that potential plaintiffs were reasonably induced to refrain from filing a timely claim. The potential opt-in plaintiffs knew what their primary job duties were, and they knew that they were not paid overtime if they worked more than forty hours in a week. Therefore, the potential opt-in plaintiffs had all the information they needed to file an FLSA claim, and equitable tolling is not appropriate.

The Court notes that at least one of the named Plaintiffs received a letter from JRN in early 2016 stating that JRN was not legally required to change its pay practices for assistant managers. Dukes received a similar letter. But the present record does not establish that all potential opt-in plaintiffs received such a letter. And there is nothing in the present record to suggest that all potential plaintiffs were reasonably induced to refrain from filing a claim based on the letter. For all of these reasons, the Court declines to apply equitable tolling.

CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Conditional Certification (ECF No. 25) is granted.

The Court conditionally certifies this action as an FLSA collective action for all current and former assistant managers or assistant unit managers who were employed by JRN, Inc. at any time during the last three years and who were paid as salaried/exempt employees.[3]

Within twenty-one days of the date of today's Order, the parties shall submit a joint proposed notice and consent form to the Court for approval and a joint proposal on the methodology

---

[3] Plaintiffs allege that Defendants willfully violated the FLSA. Willful violations of the FLSA are subject to a three-year statute of limitations. 29 U.S.C. § 255(a).

for notifying potential class members.[4]  Within twenty-eight days of the date of today's Order, Defendants shall provide Plaintiffs' counsel with a list of all individuals who are potential opt-in plaintiffs based on the class as defined above. The list shall be in electronic format and shall include each individual's name, job title, last known address, email address, telephone number, employment dates, and employment location. The parties shall enter into a confidentiality agreement such that any of the information provided shall be used solely for the purpose of notifying potential class members of their right to opt in to this action.

The discovery stay is lifted.  Within twenty-one days of the date of today's Order, the parties shall submit their joint proposed scheduling/discovery order in accordance with the Court's Rules 16/26 Order (ECF No. 63).


IT IS SO ORDERED, this 12th day of July, 2016.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[4] The Court is inclined to approve notice via first-class mail and email to all individuals who are potential opt-in plaintiffs based on the class as defined above.  The Court is not inclined to require Defendants to effectuate notice.